Smitherman Brothers Trucking, Inc. ("Smitherman"), petitions for a writ of mandamus directing the trial court to vacate its April 9, 1999, order prohibiting Smitherman, through its medical case manager, from engaging in "any ex parte [oral] communication with any medical provider" for William Harris. Harris, one of Smitherman's employees, was injured on the job and has a workers' compensation claim pending. We grant the petition.[1] *Page 1233 
The sole issue presented by this petition is whether Ala. Code 1975, § 25-5-77(b), requires that all communications between an employer or an employer's case manager and a medical-care provider, concerning an employee's medical care for an on-the-job-injury, be in writing.[2]
Harris argues here, as he did in the trial court, that §25-5-77(b) prohibits any oral communications between an employer's case manager and an injured employee's medical-care provider. Harris maintains that all communications must be in writing, either by letter through the mail or by documents transmitted by a fax machine. Smitherman contends that §25-5-77(b) contains no such prohibition of oral communications. Smitherman further argues that portions of the Alabama Administrative Code clearly contemplate oral communications when they are reasonably necessary for the employer to fulfill its statutory obligation of providing and overseeing an employee's medical care.
Section 25-5-77(a) states:
 "[A]n employer] shall pay an amount not to exceed the prevailing rate or maximum schedule of fees as established herein of reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of the employment, as may be obtained by the injured employee. . . ."
This provision places an affirmative duty on an employer to pay for an employee's reasonably necessary medical expenses. Implicit in this provision is an employer's right to oversee that treatment so as to ensure not only that the employee receives the proper treatment, but also that that treatment is reasonably necessary and that it is provided in the most efficient and cost-effective manner, without compromising the quality of care. The Legislature reaffirmed this principle in Ala. Acts 1992, Act No. 537, which amended § 25-5-1. Section 1 of that Act contained the following statement of legislative intent:
 "It is the intent of the Legislature that the Department of Industrial Relations and the Alabama judicial system shall administer the Alabama Workers' Compensation Act to provide a workers' benefit system to insure the quick and efficient payment of compensation and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to the Alabama Workers' Compensation Act. . . .
". . . .
 "It is the finding and expressed intent of the Legislature that the existence of a fair and affordable workers' compensation system within the State of Alabama materially contributes to the economic growth and prosperity of the state and all its citizens. It is the further finding of the Legislature that the provision of quality medical services to employees injured in the workplace at a reasonable and fair cost to employers is an important part of a workers' compensation system. The establishment of a Workers' Compensation Medical Services Board as constituted in this amendatory *Page 1234 
act is considered by the Legislature to be the most appropriate mechanism for insuring that high quality medical services are provided in a cost-effective manner to employees injured in the workplace."
Section 25-5-77(b) reads, in its entirety, as follows:
 "If requested to do so by the employer, the injured employee shall submit to examination by the employer's physician at all reasonable times, but the employee shall have the right to have a physician of his or her own selection present at the examination, in which case the employee shall be liable to the physician of his or her own selection for his or her services. The employer shall pay for the services of the physician making the examination at the instance of the employer. If a dispute arises as to the injury, or as to the extent of the disability therefrom, the court may, at the instance of either party or of its own motion, appoint a neutral physician of good standing and ability to make an examination of the injured employee and to report his or her findings to the court, the expense of which examination shall be borne equally by the parties. If the injured employee refuses to comply with reasonable request [sic] for examination, or refuses to accept the medical service or physical rehabilitation, which the employer elects to furnish under this chapter, the employee's right to compensation shall be suspended and no compensation shall be payable for the period of the refusal. A physician whose services are furnished or paid for by the employer, or a physician of the injured employee who treats or makes or is present at any examination of an injured employee may be required to testify as to any knowledge obtained by him or her in the course of the treatment or examination as the treatment or examination related to the injury or the disability arising therefrom. The physician shall, upon written request of the injured employee or his or her employer and without consent of or notice to the employee or employer not making the request, furnish the injured employee or his or her employer a written statement of his or her professional opinion as to the extent of the injury and disability. In all death claims where the cause of death is obscure or is disputed, any interested party may require an autopsy, the cost of which is to be borne by the party demanding the autopsy. The term `physicians' shall include medical doctor, surgeon, and chiropractor. A hospital, medical clinic, rehabilitation service, or other person or entity providing treatment to an employee or providing facilities at which the employee receives treatment shall, upon the written request of the employee or of the employer, furnish, at a reasonable cost, the employee or the employer a copy of the records, including X-rays and laboratory reports, relating to the treatment of the injured employee. The copy may be furnished without the consent of or notice to the employee or employer not making the request. A physician, hospital, medical clinic, rehabilitation service, or other person or entity providing written statement [sic] of professional opinion or copies of records pursuant to this subsection shall not be liable to any person for a claim arising out of the release of medical information concerning the employee."
(Emphasis added.)
Harris relies exclusively on the sentences emphasized above. When read in context, however, these sentences do nothing more than place an affirmative duty on a treating physician, or an entity operating the facilities where treatment takes place, to provide to an employer or to an employee, on written request, a written professional opinion as to the extent of the employee's injury and any disability or a copy of the records supporting that opinion. Nothing in § 25-5-77(b) indicates that the Legislature intended to impose a *Page 1235 
blanket prohibition against all oral communications between an employer or an employer's case manager and an employee's medical-care provider. This Court cannot read into a statute words that are not there. A statute clear on its face must be applied, not construed. DeKalb CountyL.P. Gas Co. v. Suburban Gas, Inc., 729 So.2d 270 (Ala. 1998).
Section 25-5-293(k) provides, in pertinent part:
 "Notwithstanding any other provision of this section to the contrary, it is the intent of this section that any and all utilization review, bill screening, medical necessity determinations, or audits which relate to the services of physicians as defined in Section 25-5-310 shall only be conducted under and in accordance with policies, guidelines, or regulations which have been jointly approved by the Workers' Compensation Medical Services Board and the director [of the Department of Industrial Relations] under the provisions of Section 25-5-312, as and when such policies, guidelines, criteria, and regulations are adopted in a final and effective form pursuant to the Alabama Administrative
Section 25-5-312 provides, in pertinent part:
 "The [Workers' Compensation Medical Services Board] shall exercise general supervision in all matters related to the provision of medical services provided by physicians, as defined in Section 25-5-310, rendered to workers under this article. The duties of the board shall include, but are not limited to, the following:
 "(1) Study, develop, and implement any necessary and reasonable guidelines for medical services and physician care provided by physicians. In addition, with respect to services provided by physicians, the board shall study, develop, and recommend to the director uniform medical criteria and policies for the conduct of utilization review, bill screenings, and medical necessity determinations for use by insurance carriers, self-insurers, and claims administrators."
Chapter 480-5-5 of the Alabama Department of Industrial Relations Workers' Compensation Administrative Code sets out rules and regulations governing bill screening, medical case management, and utilization review. Section 480-5-5-.01 provides in part:
 "(1) These rules are designed to cover permissive bill screening and permissive utilization review undertaken on behalf of an employer by a person or entity other than an employee of the employer and following a determination that an employee has suffered an injury by accident arising out of and in the course of the employee's employment. These rules are not to be interpreted as limiting the employer's [own] prerogative.
 "(a) Nothing in Rule 480-5-5-.06 [setting out a utilization review process] shall be construed to restrict or deny the employer's prerogative to authorize medical care pursuant to the Workers' Compensation Law.
 "(b) These Rules shall address medical services provided to compensable workers' compensation cases (claims) approved and authorized by the employer.
". . . .
 "(7) Utilization review and bill screening services may be performed at the option of the employer."
Section 480-5-5-.02(13) defines "bill screening" as follows:
 "The evaluation and adjudication of provider bills for appropriateness of reimbursement relative to medical necessity and prevailing rates of reimbursement, duplicative charges, unbundling of charges, relativeness of services to injury or illness, necessity of assistant surgeons, adjudications of multiple procedures, number of modalities, global procedures, and any prevailing adjudication issues that may apply."
See also § 25-5-1(20) (defining "bill screening"). Section 480-5-5-.02(43) *Page 1236 
defines "medical case management" as follows:
 "The process of assessing, planning, implementing, coordinating, monitoring and evaluating the services required to respond to an employee's health care needs to attain the goals of quality and cost effective care. Case management is not intended as a substitute for utilization review and medical necessity determinations under these rules and case managers are not permitted to deviate from or alter a medical regimen ordered by a treating physician."
"Utilization review" is defined in § 480-5-5-.02(66) as follows:
 "The determination of medical necessity for medical and surgical in-hospital, outpatient, and alternative setting treatments for acute and rehabilitation care. It includes pre-certification for elected treatments. Concurrent review and, if necessary, retrospective review are required for emergency cases."
See also § 25-5-1(19) (defining "utilization review"). Section480-5-5-.03(1)(a) provides, in pertinent part:
 "Appropriate reimbursement pursuant to Rule 480-5-5-.04
for undisputed medical services reasonably performed and billed in accordance with Code of Ala. 1975, § 25-5-3 shall be paid to the provider within 25 working days of receipt of an approved service claim form pursuant to Rule 480-5-5-.22. A request for any additional documentation by a payer or agent shall be made by the payer or agent to the provider within fourteen (14) working days of receipt of the approved service claim form by the payer or agent. A request for documentation shall be made by the payer or agent to the provider via phone with written follow up or facsimile. If the documentation has not been provided to the requested party within 14 working days of the receipt of the phoned
request, the 25 working day deadline for payment shall not begin to run until the requested documentation is provided to the requesting party. If the requested documentation has been provided to the requesting [party] within 14 working days of the receipt of the phoned request, the 25 working day deadline for payment shall begin to run upon receipt of the requested documentation by the requesting party."
(Emphasis added.) Section 480-5-5-.29 provides, in part:
 "(1) Medical case management determination shall be the responsibility of the employer/agent unless delegated. This service may be performed in conjunction with utilization management; however, it is differentiated by its designation to promote optimal recovery and physical rehabilitation by professional involvement in the physical rehabilitation process.
 "(2) Since medical case management is an integral component of a utilization management program, it shall, at the discretion of the employer/agent, be used as a component in the physical rehabilitation of the injured worker. The overall goal of medical case management is to facilitate the organizing and sequencing of appropriate health care services. This shall be done in the most cost effective manner without compromising quality of care in order to promote optimal outcomes for all parties involved.
 "(3) The employer/agent is the responsible party for determining the necessity of medical care management."
(Emphasis added.)
Our examination of the statutory and regulatory provisions outlined above indicates that an employer, through a designated case manager, has the right to oversee and manage an injured employee's medical care "in the most cost effective manner without compromising quality of care." Implicit within the regulatory provisions, and as expressly stated in § 480-5-5-.03, is the right of a case manager to contact a medical provider by telephone for the purpose of obtaining reasonably necessary information, so as to allow the case manager to assist the employer in *Page 1237 
fulfilling its statutory obligation to provide and oversee the employee's medical care.
We conclude, therefore, that Smitherman has a clear legal right to the relief sought. See Ex parte Woodward Iron Co.,277 Ala. 133, 167 So.2d 702 (1964) (mandamus lies to require a trial court to vacate an unauthorized order in a workers' compensation case). We hasten to point out, however, that in issuing the writ of mandamus we express no opinion as to whether oral or written communications or a combination of both would be the best or most cost-effective means of overseeing an employee's medical care in any particular situation. Harris may be correct in arguing that "[w]ritten communications reduce the mishandling of claims, misunderstandings, delays, communication breakdowns, suspicion and resulting litigation." However, it is for the Legislature, not this Court, to address these policy considerations. If the Legislature wishes to require that all communications between an employer's medical case manager and a medical-care provider be in writing, then it may certainly do so; however, it has not done so yet. Likewise, our decision should not be construed as restricting the trial court's discretion to enter an order protecting an employee from unreasonable interference with his or her medical care by an employer or by an employer's case manager. (There is no evidence of such interference, harassment, etc., in the record before us.) We hold only that § 25-5-77(b) does not prohibit all oral communications between a medical case manager and a medical-care provider.[3]
 PETITION GRANTED; WRIT ISSUED.
Hooper, C. J., and Maddox, Cook, See, Lyons, Brown, Johnstone, and England, JJ., concur.
[1] The Court of Civil Appeals has original jurisdiction of a petition for a writ of mandamus relating to a matter over which it would have appellate jurisdiction. Ala. Code 1975, § 12-3-11. The Court of Civil Appeals has exclusive appellate jurisdiction in workers' compensation cases. § 12-3-10; Ex parte Gamble,709 So.2d 67 (Ala.Civ.App. 1998). The Court of Civil Appeals denied Smitherman's petition for mandamus relief, without an opinion, stating only that it was denying relief on the authority of Exparte United Service Stations, Inc., 628 So.2d 501 (Ala. 1993). Smitherman has renewed its request for relief by filing a new petition in this Court. See Rule 21(e)(1), Ala.R.App.P.
[2] We pretermit a detailed discussion of the underlying facts. Suffice it to say that Smitherman's case manager, Universal Adjusters, Inc. ("Universal"), questioned the necessity of certain psychiatric treatment recommended by Harris's primary-care physician. After Universal had apparently contacted one of Harris's medical providers (a psychiatrist) by telephone, Harris successfully petitioned the trial court for an order enjoining any further oral communications.
[3] The Legislature has adopted a psychiatrist-patient privilege. See Ala. Code 1975, § 34-26-2; see also Rule 503, Ala.R.Evid.; C. Gamble, McElroy's Alabama Evidence § 414.01 (5th ed. 1996). Recognizing that § 25-5-77(b) specifically requires a psychiatrist to provide to an employer or an employer's case manager a written statement of his or her professional opinion as to the extent of the employee's injury or disability, as well as the psychiatrist's records supporting that statement, and to testify with regard thereto, Harris "suggests" that this Court should reconcile the facially competing interests expressed in §34-26-2 and § 25-5-77(b) by limiting the disclosure of information in a workers' compensation case to a psychiatrist's "opinions or evaluations." Harris argues that a psychiatrist's personal notes or records that could contain confidential communications between the patient and the psychiatrist should not be discoverable, even in the workers' compensation context. However, after examining the record, we conclude that the issue whether Harris may invoke a psychiatrist-patient privilege and thereby prevent the disclosure of certain information to his employer's case manager is separate from the issue presented by Smitherman's petition — whether an employer's case manager is statutorily restricted to written communications with an injured employee's medical-care providers. Nothing in the record indicates that Harris raised a question regarding the psychiatrist-patient privilege in the trial court or that the trial court's order was in any way based on that privilege. To the contrary, the record clearly indicates that the two psychiatrists who have examined Harris to date have provided to the case manager not only their opinions and evaluations, but also their records and notes supporting those opinions and evaluations. Those records and notes divulge communications between Harris and the two psychiatrists. Therefore, even assuming, without deciding, that Harris could claim a psychiatrist-patient privilege and thereby prevent the disclosure of certain information, it appears that he may have waived that privilege. Furthermore, we note that the scope of the trial court's order is very broad. That order is not limited to psychiatrists; it prohibits "any" oral communications between Smitherman's case manager and "any medical provider" for Harris. Alabama law does not recognize a general physician-patient privilege of confidentiality. See Exparte United Service Stations, Inc., supra; McElroy's, supra, at § 413.01. Therefore, the trial court's order, to the extent it applies to physicians not covered by a recognized privilege, could not be upheld even if we were to accept Harris's privilege argument. *Page 1238