Overnite Transportation Company ("Overnite") appeals from a judgment of the Jefferson Circuit Court in a case brought under the Workers' Compensation Act, Ala. Code 1975, § 25-5-1 et seq. The primary issue presented is whether the trial court erred in requiring Overnite to pay for certain medical treatments for J.R. McDuffie. Overnite also argues that the trial court's determination that it was in contempt, and its award to McDuffie of $5,000 in attorney fees based on that finding, was in error.
McDuffie originally filed this case on October 10, 1997, as a claim for benefits under the Workers' Compensation Act because of an alleged injury he sustained arising out of and in the course of his employment with Overnite. During the pendency of that lawsuit, McDuffie requested that Overnite provide him a list of four doctors from which to choose a new treating physician, see
§ 25-5-77(a), and, after receiving the list from Overnite, he selected Dr. John Hackman from the list as his authorized treating physician.
On February 10, 2000, Dr. Hackman sent a letter to McDuffie referring him to Dr. Edwin Kelsey for pain management. In pertinent part, that letter read:
 "This letter will serve as a referral to Dr. Edwin Kelsey, . . . for pain management. . . .
 "Because of your continuing discomfort, you have requested referr[al] to Dr. Edwin Kelsey. You can use this letter as a referral and go ahead and schedule an appointment to see Dr. Kelsey."
On February 24, 2000, counsel for Overnite wrote to counsel for McDuffie regarding McDuffie's request for pain management. Counsel for Overnite wrote that it did not appear to him that the pain management McDuffie sought was related to his work injury. Counsel questioned the validity of Dr. Hackman's referral to Dr. Kelsey, describing the referral as having been done in a "backhanded sort of way." In spite of this, counsel wrote, Overnite had agreed to allow McDuffie to obtain pain-management treatment. Overnite did not authorize McDuffie to see Dr. Kelsey, however. Instead, it authorized him to see Dr. Ronald Moon. Counsel for Overnite concluded his February 24, 2000, letter: "I emphasize that . . . the treatment by Dr. Edwin Kelsey . . . is [not] authorized by Overnite."
Pursuant to Dr. Hackman's referral, and in spite of the letter from counsel for Overnite, McDuffie began seeing Dr. Kelsey for pain management. Dr. Kelsey prescribed medication for McDuffie, for which Overnite paid.
The trial court approved a settlement of the case on October 10, 2000. In pertinent part, the settlement provided:
 "The parties have made known to the Court that they have reached a compromised agreement to settle this claim, subject to the approval of this Court, for the sum of $95,000.00 as a full and complete settlement of any and all claims for workers' compensation benefits, including temporary total disability and permanent partial or permanent total disability benefits with the defendant remaining liable to the plaintiff for future medical benefits as required by the Workers' Compensation Act of Alabama which was in effect at the time of said accident."
(Emphasis added.)
In August 2001, Overnite, apparently realizing for the first time that it had been paying for medications prescribed to McDuffie by Dr. Kelsey, stopped paying for those medications and for travel expenses associated with treatment by Dr. Kelsey. Overnite also denied McDuffie's claim for a personal mobility vehicle that Dr. Kelsey had prescribed for him. In a *Page 1095 
letter from Overnite's counsel to McDuffie's counsel dated November 12, 2001, counsel wrote that "Overnite Transportation is not obligated to provide Mr. McDuffie with the motorized scooter which he believes he requires because it has not been indicated by an approved physician."
On May 2, 2003, McDuffie filed a motion to require Overnite to pay the medical costs and the travel costs (i.e., mileage reimbursement) associated with the treatment he had received from Dr. Kelsey. McDuffie thereafter filed his brief in support of the motion, in which he asked the court to hold Overnite in contempt for allegedly violating the terms of the parties' settlement agreement by having failed to pay for those medical costs and to order Overnite to pay a $5,000 attorney fee.
Overnite's brief in opposition to McDuffie's motion asserted that Overnite should not have to pay for treatment that it did not authorize and that the assessment of an attorney fee was unjustified because there was no evidence indicating that Overnite had acted in bad faith or had willfully disobeyed a court order.
The trial court held a hearing on McDuffie's motion and, on October 14, 2003, entered an order requiring Overnite to pay for the medical and travel expenses sought by McDuffie (including the cost of the personal mobility vehicle), finding Overnite in contempt for violating the order approving the settlement agreement and ordering Overnite to pay $5,000 in attorney fees to McDuffie.
After Overnite filed a motion to alter, amend, or vacate the judgment, the trial court entered a revised order amending the language of the first order by: (1) deleting the finding of contempt; (2) deleting the $5,000 attorney-fee award; and (3) allowing McDuffie's counsel 30 days to submit proof of a reasonable attorney fee. Overnite appealed from this revised order.
Thereafter, this court determined that the trial court's order was not a final, appealable order under Rule 54(b), Ala. R. Civ. P., in that the order failed to resolve all of the claims presented by McDuffie. Specifically, the trial court's order, as amended, failed to address McDuffie's claim that not only should Overnite be responsible for the cost of his treatment by Dr. Kelsey, but that Overnite also should be held in contempt for having refused to accept responsibility for that cost. Accordingly, this court reinvested the trial court with jurisdiction to enable it to address the contempt claim. In response, the trial court entered an amended order holding Overnite in contempt and awarding McDuffie $5,000 in attorney fees as a sanction for that contempt.
On appeal, Overnite contends that the trial court erred when it ordered Overnite to pay McDuffie's unpaid medical expenses related to his treatment by Dr. Kelsey. Overnite also contends that the trial court abused its discretion in holding it in contempt for not having paid those expenses.
Our standard of review in workers' compensation cases was prescribed by the Legislature in Ala. Code 1975, § 25-5-81(e)(2). We recently set forth that standard, as well as the other applicable presumptions:
 "When this court reviews a trial court's factual findings in a workers' compensation case, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. Substantial evidence is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). Further, this court reviews the facts `in the light most favorable to the findings of the trial court.' Whitsett *Page 1096 v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App. 1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262 (Ala. 1996). This court has also concluded: `The [1992 Workers' Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court.' Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014
(Ala.Civ.App. 1995). However, our review as to purely legal issues is without a presumption of correctness. See Holy Family Catholic School v. Boley, 847 So.2d 371, 374 (Ala.Civ.App. 2002) (citing § 25-5-81(e)(1), Ala. Code 1975)."
Reeves Rubber, Inc. v. Wallace, 912 So.2d 274, 279
(Ala.Civ.App. 2005). Additionally, we review a finding of civil contempt under an abuse-of-discretion standard. Gilbert v.Nicholson, 845 So.2d 785, 791 (Ala. 2002).
With respect to the trial court's order requiring it to pay McDuffie's unpaid medical expenses related to his treatment by Dr. Kelsey, Overnite argues that, under Ala. Code 1975, §25-5-77(a), an employer is only liable to pay for medical treatment rendered by a treating physician that it has authorized. Because it expressly refused to authorize McDuffie's treatment by Dr. Kelsey, Overnite argues that it cannot be required to pay for that treatment or for the medications prescribed by Dr. Kelsey.
Section 25-5-77(a) indicates that the employer shall make the initial choice of a physician who shall be authorized to treat the employee. The statute also provides that the employer shall be responsible for paying the costs of "reasonably necessary" medical treatments for the employee. Accordingly, the employer is responsible for paying for the treatment choice made by the authorized treating physician so long as that choice falls within the parameters of what is "reasonably necessary" to treat the employee. See Ex parte Southeast Alabama Med. Ctr.,835 So.2d 1042, 1046 n. 4 (Ala.Civ.App. 2002).[1] This principle has been applied repeatedly in cases in which the "treatment" recommended by the authorized physician is a treatment to be administered by a second physician.
For example, in Jasper Community Hospital, Inc. v. Hyde,419 So.2d 594 (Ala.Civ.App. 1982), the employee's Alabama physician referred her to the Campbell Clinic in Memphis, Tennessee. This court concluded that the employee's "treatment at the Campbell Clinic in Memphis, Tennessee was authorized by the [employer]. The record clearly indicates that Dr. Russell[, the employee's physician,] referred her there for diagnosis and treatment. Since we have found that Dr. Russell's treatment of [the employee] was authorized, we have no difficulty in determining that other reasonably necessary medical treatment prescribed by him was also authorized." 419 So.2d at 597.
To similar effect was this court's holding in Blue Bell, Inc.v. Nichols, 479 So.2d 1264 (Ala.Civ.App. 1985). As this court explained:
 "[W]e find that the evidence would have supported a holding that the employee was given the impression that he had the authority from [the employer] to at least see Dr. Pyle, who referred him to Dr. Hatchett. Since the consultation *Page 1097 
with Dr. Pyle was authorized [by the employer], we have no difficulty in determining that other reasonably necessary medical treatment consisting of the referral of the patient to Dr. Hatchett and the subsequent hospitalization were also authorized."
479 So.2d at 1267.
In Genpak Corp. v. Gibson, 534 So.2d 312 (Ala.Civ.App. 1988), the employer authorized the employee to be treated by Dr. Frank Gogan, a general practitioner. Id. Dr. Gogan admitted the employee into the hospital so that a myelogram could be performed on her. Id. The employer gave the employee the names of three doctors who it authorized to perform the myelogram. Id. at 313-14. Before the employee's admittance to the hospital, the employer had informed both the employee's attorney and Dr. Gogan that Dr. Jackson Bostwick was not acceptable to perform the myelogram. Id. at 314. In spite of the employer's unequivocal and express refusal to authorize treatment by Dr. Bostwick, Dr. Gogan asked Dr. Bostwick to perform the myelogram on the employee, which he did. Id. at 314.
After a trial on the employee's workers' compensation claim, the trial court found the employee totally and permanently disabled and, among other things, ordered the employer to pay $305 to reimburse the employee for the treatment that Dr. Bostwick had provided to the employee. Id. at 313. On appeal, the employer argued that that award was improper because the employer had not authorized the employee's treatment by Dr. Bostwick and, in fact, had expressly refused to authorize treatment by him. Id. This court disagreed. Citing JasperCommunity Hospital and Blue Bell, Inc., this court held as follows:
 "Since Dr. Gogan, the employer's physician, admitted the employee into the hospital and subsequently requested Dr. Bostwick to perform the myelogram, we have no difficulty in determining that the myelogram performed by Dr. Bostwick was authorized."
534 So.2d at 314.
As this court stated more recently in Ex parte Alabama PowerCo., 863 So.2d 1099, 1102 (Ala.Civ.App. 2003), albeit in the context of a referral for a functional capacities evaluation, "the [authorized treating] physician is empowered under the Act to treat the employee for so long as is reasonably necessary andto refer the employee to other medical providers for reasonablynecessary treatment." (Emphasis added.) See generally City ofAuburn v. Brown, 638 So.2d 1339, 1341 (Ala.Civ.App. 1993) ("We hold that, as a general rule, the employer may not dictate to the employee that he may not have the medical treatment recommended by his authorized, treating physician.").
The employer in this case authorized Dr. Hackman to serve as McDuffie's treating physician, and the trial court had substantial evidence before it indicating that Dr. Hackman had referred McDuffie to Dr. Kelsey for pain management. Consistent with this court's holding in Genpak and the other cases cited above, because the treating physician prescribed treatment by Dr. Kelsey, and because there is no evidence indicating that that treatment did not fall within the parameters of what was "reasonably necessary" as contemplated by § 25-5-77(a), that treatment was authorized under the Workers' Compensation Act.[2]
Overnite also cites Ala. Admin. Code (Dep't of Indus. Relations) Rule 480-5-5-.12 *Page 1098 
for the proposition that an employer or its agent has the right to "preapprove" referrals of an employee to another physician. Rule 480-5-5-.12, reads as follows:
 "The employer's authorized treating physician (other than emergency medical services) shall be the physician of record for attending or referral purposes. All referrals shall be pre-approved by the employer/agent. The employer/agent shall keep all interested parties involved in the compensable case informed of any authorized change of treating physician."
Overnite's reliance on this provision is without merit.
Rule 480-5-5-.12 was promulgated in 1996, purportedly on the authority of § 25-5-293, Ala. Code 1975. There is no provision in § 25-5-293, however, that modifies the various provisions of §25-5-77(a) that are noted at the outset of this analysis and that provide the underpinning for the holdings in the above-discussed cases. See generally Ex parte Southeast Alabama Med. Ctr.,835 So.2d 1042 (noting that the 1992 amendments to the Workers' Compensation Act, see Ala. Acts. 1992, Act No. 92-537, made no changes in the language of § 25-5-77(a) pursuant to which an employee has the right to reasonably necessary medical treatments). Likewise, there is no provision in § 25-5-293 that in any respect addresses, much less modifies, those holdings. The statute merely provides that an insurance carrier and a self insured "may" adopt utilization review,[3] see §25-5-293(g), Ala. Code 1975, and that, if there is to be a utilization review or a "medical necessity determination" it "shall only be conducted under and in accordance with policies, guidelines, or regulations which have been jointly approved by the Workers' Compensation Medical Services Board and the director under the provisions of Section 25-5-312, as and when such policies, guidelines, criteria, and regulations are adopted in a final and effective form pursuant to the Alabama Administrative Procedure Act," see § 25-5-293(k), Ala. Code 1975. Nothing in §25-5-293(g), § 25-5-293(k), nor any other portion of the 1992 amendments to the Workers' Compensation Act, however, purports to give an employer direct authority to "preapprove" or reject referrals made by an authorized treating physician.[4] *Page 1099 
 "An administrative regulation must be consistent with the statute pursuant to which it was promulgated; it cannot usurp legislative power, and may neither subvert nor enlarge upon statutory policy. E.g., Ex parte Jones Mfg. Co., 589 So.2d 208 (Ala. 1991); Ex parte State Dep't of Human Res., 548 So.2d 176 (Ala. 1988) (regulation must be consistent with the statute under which it is promulgated); Ex parte City of Florence, 417 So.2d 191 (Ala. 1982) (administrative agency cannot usurp legislative powers or contravene statutes); Alabama State Milk Control Bd. v. Graham, 250 Ala. 49, 33 So.2d 11 (1947) (regulation cannot subvert or enlarge upon statutory policy). See also Terminato v. Pennsylvania Nat'l Ins. Co., 538 Pa. 60, 72, 645 A.2d 1287, 1293 (1994) (rejecting as inconsistent with the statute the implication that judicial review could not be obtained unless an employee first sought peer-review-organization (PRO) reconsideration when the regulation at issue merely stated that the employee could seek judicial relief after seeking PRO reconsideration)."
Ex parte Southeast Alabama Med. Ctr., 835 So.2d at 1052 n. 10.
Under § 25-5-77(a) and the above-discussed cases interpreting that section, an employee is entitled to reimbursement for reasonably necessary treatment from a physician or other medical provider to whom he or she has been referred by the initial, authorized treating physician. Dr. Hackman, the authorized treating physician, referred McDuffie to Dr. Kelsey for further treatment. Nothing in the record before us indicates that the treatment thus prescribed was not reasonably necessary, or that Overnite's decision to refuse payment for that treatment was made pursuant to an approved utilization-review program or medical-necessity-determination process as contemplated by §25-5-293(k). We therefore are clear to the conclusion that McDuffie is entitled to reimbursement under the Act for treatment by Dr. Kelsey in this case. As to this issue, therefore, the trial court's judgment is due to be affirmed.
Although we are clear to the foregoing conclusion, we likewise are clear to the conclusion that Overnite's position to the contrary was not an unreasonable one and, thus, was not an appropriate basis for a finding of contempt. We first note that the trial court's order that formed the basis for the contempt finding did not specifically require Overnite to pay for the services of Dr. Kelsey. If it had, we would have a different case than the one we have before us.
Instead, the trial court's order at issue merely required Overnite to pay for medical treatments "as required by the Workers' Compensation Act." While, based on the statutory provisions and caselaw discussed above, McDuffie is due to prevail on the issue of reimbursement for treatment by another physician to whom he has been referred by his authorized treating physician, Overnite's position to the contrary cannot be viewed as contemptuous, especially in light of the promulgation of Rule480-5-5-.12. Indeed, our review of existing caselaw indicates that this is the first decision of either this court or our Supreme Court that addresses Rule 480-5-5-.12.
Rule 70A, Ala. R. Civ. P., governs contempt proceedings that arise out of civil actions. Civil contempt is defined by that rule as the "willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with." Rule 70A(a)(2)(D), Ala. R. Civ. P. (emphasis added). Our Supreme Court, in Travelers Indemnity Co.of Illinois v. Griner, 809 So.2d 808, 814 (Ala. 2001), characterized its decision 10 years earlier in Ex parteCowgill, *Page 1100 587 So.2d 1002 (Ala. 1991), as holding "that the [trial] court, in the exercise of its equitable powers, could hold a party in contempt upon a finding that `the employer willfully and contumaciously refused'" to follow the trial court's order.
We conclude that the trial court abused its discretion in holding Overnite in contempt. The record does not support a conclusion that Overnite willfully or contumaciously violated the trial court's previous order.
The trial court's judgment is affirmed insofar as it requires Overnite to pay for the treatment of McDuffie by Dr. Kelsey. The trial court's judgment, insofar as it holds Overnite in contempt and, based thereon, orders Overnite to pay $5,000 in attorney fees to McDuffie, is reversed, and the cause is remanded for the entry of an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., and THOMPSON and BRYAN, JJ., concur.
PITTMAN, J., concurs in the result, without writing.
[1] Compare Ex parte Brookwood Med. Ctr., Inc.,895 So.2d 1000, 1007 (Ala.Civ.App. 2004) (Murdock, J., concurring in the result) (noting that the trial court in that case was not justified in fashioning relief "for the employee on the ground that the medical treatment being offered by . . . the employee's . . . authorized treating physician" and the pain specialist to whom the authorized treating physician had already referred the patient had not been shown in that case to fall outside "the parameters of what was `reasonably necessary,' within the meaning of § 25-5-77(a)" to treat the employee).
[2] This case does not present the arguably different question of whether McDuffie would be entitled to reimbursement of the cost of being treated by a physician to whom Dr. Kelsey, in turn, might have referred him.
[3] In pertinent part, § 25-5-293(g) states that "insurance carriers and self-insurers, individual and group, may have utilization review and medical bill screenings" and that "[a]ll insurers, claims adjusters, self-administered employers, and any entity involved in the administration or payment of workers' compensation claims may, but are not required to, implement utilization review and bill screening for health services provided to employees covered under this article."
[4] Of course, an employer may refuse to pay for treatment of an employee by a physician to whom the employee has been referred on the ground that that treatment is not "reasonably necessary" if it does so pursuant to a utilization review or medical-necessity determination conducted in accordance with the regulations contemplated by § 25-5-293(k). See Ex parteSoutheast Alabama Med. Ctr., 835 So.2d at 1050 (explaining that, when the ground for an employer's refusal to pay for a medical treatment "is an employer's decision that a treatment recommended by an authorized physician is not reasonably necessary, the employer may properly assert that decision only if the employer has first followed, and has made that decision based upon," a utilization review or medical-necessity determination conducted under and in accordance with regulations promulgated pursuant to § 25-5-293(k)). That is not the type of determination at issue in the present case. Instead, the employer takes the position that Rule 480-5-5-.12 gives it a direct right, apart from the use of any approved utilization-review program or medical-necessity-determination process to refuse to pay for (i.e., refuse to "preapprove") the treatment of the employee by the physician to whom he has been referred by the initial authorized treating physician.