THOMPSON, Presiding Judge.
 

 On November 18, 1994, Larry E. Bolton filed a complaint seeking workers’ compensation benefits for a back injury he sustained on or about September 4, 1991, while working in the line and scope of his employment for James River Corporation (“JRC”). JRC answered and admitted compensability, but it challenged the extent of Bolton’s disability. Bolton and JRC subsequently entered into a settlement agreement, which the trial court incorporated into its judgment of May 19, 1995. That judgment stated that Bolton had suffered an injury to his back that rendered him permanently and totally disabled, and it provided for a lump-sum payment of workers’ compensation benefits. It also provided that Bolton was “entitled to receive those authorized medical benefits as are due him under the Workers’ Compensation Act.”
 

 On October 16, 1995, Bolton filed a petition to enforce the May 19, 1995, judgment and to require JRC to pay his medical bills. Bolton later amended his petition to seek an attorney fee. JRC opposed the petition, citing two reports rendered following utilization review that determined that the chiropractic treatment Bolton was receiving was not necessary and proper. On March 19, 1996, the trial court entered a judgment in which it found that Bolton was entitled to receive chiropractic treatment and ordered JRC to pay for the treatment. The trial court declined to award Bolton an attorney fee.
 

 In 2005, as part of the utilization-review process, JRC submitted Bolton’s medical records to Dr. Theodore W. Parsons III for peer review, in order to evaluate whether Bolton’s on-going medical treatment was reasonable and necessary. At that time Bolton had moved from Alabama and was living in Texas. In August 2005, Dr. Parsons authored a report in which he concluded that the medical treatment being provided to Bolton was not reasonable and necessary. On December 21, 2005, Sedgwick Claims Management Services, Inc. (“Sedgwick CMS”), a workers’ compensation claims adjuster employed by JRC, notified Dr. Garcia and Dr. Martinez, two of Bolton’s treating physicians at the time, that only the medications Limbitrol, to treat depression, and MetroGel, to treat chronic pain, would be authorized from that date forward to treat Bolton’s chronic pain and that any additional treatment would be limited to an exercise program. Sedgwick CMS gave no reason for the denial of coverage for other forms of treatment.
 

 On January 10, 2006, and February 3, 2006, Bolton’s attorney wrote letters to Sedgwick CMS regarding the disputed medical treatment. In his January 10,
 
 *870
 
 2006, letter, Bolton’s attorney referred Sedgwick CMS to the May 19, 1995, judgment and to the trial court’s March 19, 1996, judgment; those judgments directed JRC to reimburse Bolton for medical treatment and reiterated JRC’s responsibility to pay for treatment related to the September 1991 injury and authorized by Bolton’s attending physician. In his February 3, 2006, letter, Bolton’s attorney enclosed a letter dated January 27, 2006, from Dr. Robert G. Bass, Jr., Bolton’s internist, in which Dr. Bass stated that to maintain a functional quality of life and to control Bolton’s pain, Bolton needed additional medications beyond those authorized by Sedgwick CMS. Sedgwick CMS did not respond to the letters.
 

 On February 14, 2006, Bolton filed a second petition to enforce the workers’ compensation judgment.
 
 [1]
 
 In his petition, Bolton alleged that the action taken by Sedgwick CMS limiting his medication and treatment was taken “without legal or medical justification.” On March 15, 2006, JRC filed a response in which it denied Bolton’s allegation. Specifically, JRC stated that it had submitted Bolton’s treatment plan to a clinical reviewer, that the reviewer had determined that the treatment plan proposed for Bolton was not reasonably necessary, and that, based on that determination, Sedgwick CMS had notified Bolton’s treating physicians that it would continue to fund only reasonably necessary treatment for Bolton’s work-related back injury.
 

 On August 9, 2006, the trial court held a hearing during which it considered the arguments made by the parties’ respective attorneys and documentary evidence consisting of the August 2, 2005, peer-review report prepared by Dr. Parsons at JRC’s request and a July 15, 2006, peer-review report prepared by Dr. J. Keith Preston at Bolton’s request. After the hearing, the trial court entered an order on August 14, 2006, finding the restrictions placed on Bolton’s treatment to be unreasonable. The trial court also found that the treatment plan recommended by Bolton’s treating physicians was medically necessary and that Bolton was entitled to receive the treatment recommended by his treating physicians pursuant to the Workers’ Compensation Act. JRC was ordered to reimburse Bolton for all medications and treatments for which he had paid since December 21, 2005. The trial court further found that JRC had “willfully and contumaciously failed to comply” with the two previous judgments, and, on that basis, it ordered JRC to pay a reasonable attorney fee, subject to review if a controversy arose concerning the payment of those expenses. Because the trial court ordered JRC to pay an attorney fee without specifying the amount of the attorney fee awarded, the trial court’s August 14, 2006, order was nonfinal. See
 
 Goldome Credit Corp. v. Player,
 
 869 So.2d 1146 (Ala.Civ.App.2003) (holding nonfinal a judgment in which the trial court awarded an attorney fee but failed to ascertain the amount of the attorney-fee award).
 

 On August 31, 2006, JRC filed a motion purportedly pursuant to Rule 59(e), Ala. R. Civ. P.,
 
 [2]
 
 in which it argued that the trial court had erred by finding JRC in contempt because, it asserted, when JRC refused to pay the workers’ compensation benefits, it had fully complied with the law as it existed at the time of Bolton’s injury. JRC claimed that it had “denied the bene
 
 *871
 
 fits based solely on a medical determination that the benefits were not reasonably necessary as is required for coverage under the [Workers’ Compensation] Act.” On November 15, 2006, the trial court entered an amended order to add the following language pertaining to the December 21, 2005, notification from Sedgwick CMS to Bolton’s treating physicians: “The notice contained no reason for the denial of coverage and no recitation of any appeal procedure.”
 

 After the trial court entered its November 15, 2006, amended order, the parties filed several motions regarding the determination of the amount of the attorney fee awarded. JRC contended that the attorney-fee bill submitted by Bolton was excessive. Bolton responded with evidence tending to indicate that the attorney fee requested was reasonable. On March 16, 2007, the trial court entered a final judgment granting Bolton an attorney fee in the amount of $7,760.
 
 [3]
 
 JRC timely appealed.
 

 Our standard of review in workers’ compensation cases is as follows:
 

 “When this court reviews a trial court’s factual findings in a workers’ compensation case, those findings will not be reversed if they are supported by substantial evidence. § 25 — 5—81(e)(2), Ala.Code 1975. Substantial evidence is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). Further, this court reviews the facts ‘in the light most favorable to the findings of the trial court.’
 
 Whitsett v. BAMSI, Inc.,
 
 652 So.2d 287, 290 (Ala.Civ.App.1994), overruled on other grounds,
 
 Ex parte Trinity Indus., Inc.,
 
 680 So.2d 262 (Ala.1996). This court has also concluded: ‘The [1992 Workers’ Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court.’
 
 Edwards v. Jesse Stutts, Inc.,
 
 655 So.2d 1012, 1014 (Ala.Civ.App.1995). However, our review as to purely legal issues is without a presumption of correctness.
 
 See Holy Family Catholic School v. Boley,
 
 847 So.2d 371, 374 (Ala.Civ.App.2002) (citing § 25-5-81(e)(l), Ala.Code 1975).”
 

 Reeves Rubber, Inc. v. Wallace,
 
 912 So.2d 274, 279 (Ala.Civ.App.2005). Further, when reviewing a trial court’s finding of civil contempt, this court applies an abuse-of-discretion standard.
 
 Overnite Transp. Co. v. McDuffie,
 
 933 So.2d 1092, 1096 (Ala.Civ.App.2005);
 
 Millar v. Wayne's Pest Control,
 
 804 So.2d 213 (Ala.Civ.App.2001).
 

 JRC raises numerous issues on appeal; however, they can be reduced to three dispositive issues: (1) whether the trial court erroneously applied the requirements for precertification review,
 
 see
 
 Ala. Admin. Code, r. 480-5-5-.08 and -.09, instead of the requirements for utilization review,
 
 see
 
 Ala. Admin. Code, r. 480-5-5-.07, when finding JRC in contempt; (2) whether the trial court erred by finding that JRC had willfully and contumaciously refused to pay Bolton’s medical expenses; and (3) whether the trial court erred by awarding an attorney fee based on its finding of contempt.
 
 [4]
 

 
 *872
 
 The Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (hereinafter “the Act”), requires an employer to provide an employee with that medical treatment that is reasonable and medically necessary. Section 25-5-77(a), Ala.Code 1975, provides:
 

 “[T]he employer ... shall pay an amount not to exceed the prevailing rate or maximum schedule of fees as established herein of
 
 reasonably necessary
 
 medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus as the result of an accident arising out of and in the course of the employment, as may be obtained by the injured employee ....”
 

 (Emphasis added.) As noted by our supreme court in
 
 Ex parte Smitherman Brothers Trucking, Inc.,
 
 751 So.2d 1232, 1233 (Ala.1999),
 

 “[Section 25-5-77(a) ] places an affirmative duty on an employer to pay for an employee’s reasonably necessary medical expenses. Implicit in this provision is an employer’s right to oversee that treatment so as to ensure not only that the employee receives the proper treatment, but also that that treatment is reasonably necessary and that it is provided in the most efficient and cost-effective manner, without compromising the quality of care.”
 

 If an employer questions the necessity and reasonableness of an employee’s medical treatment, the employer may seek to review the employee’s medical treatment following a process established in regulations promulgated by the Alabama Department of Industrial Relations, Workers’ Compensation Division, and set forth in Chapter 480-5-5 of the Alabama Administrative Code. The scope of Chapter 480-5-5 is stated in Ala. Admin. Code, r. 480-5-5-.01, as follows:
 

 “These rules are designed to cover permissive bill screening and permissive utilization review undertaken on behalf of an employer by a person or entity other than an employee of the employer and following a determination that an employee has suffered an injury by accident arising out of and in the course of the employee’s employment. These rules are not to be interpreted as limiting the employer’s own prerogative.”
 

 Chapter 480-5-5 sets forth, among other things, two processes by which an employer may review an employee’s medical treatment: precertification review and utilization review. “Precertification review” is defined in Chapter 480-5-5 as “[t]he review and assessment of the medical necessity and appropriateness of services
 
 before they occur.
 
 The appropriateness of the site or level of care is assessed along with the timing, duration and cost effectiveness of the proposed services.” Ala. Admin. Code, r. 480-5-5-02(60) (emphasis added). “Utilization review” is defined in Chapter 480-5-5 as “[t]he determination of medical necessity for medical and surgical in-hospital, outpatient, and alternative setting treatments for acute and rehabilitation care. It includes pre-certification for elective treatments.” Ala. Admin. Code, r. 480-5-5-02(68).
 

 Rule 480-5-5-.07 of the Alabama Administrative Code sets forth the utilization-review process. Pursuant to that rule,
 
 *873
 
 utilization review begins with the review of an employee’s medical records by a technical reviewer,
 
 see
 
 Ala. Admin. Code, r. 480-5-5-07(2), followed by a first-level clinical review,
 
 see
 
 Ala. Admin. Code, r. 480-5-5-.07(3), and a second-level clinical review,
 
 see
 
 Ala. Admin. Code, r. 480-5-5-07(4). If the second-level clinical review leads to a decision by the employer to deny payment of medical expenses, “[t]he claimant may request through the ordering provider that a Third Level Clinical Review be conducted.” Ala. Admin. Code, r. 480-5-5 — -07(6).
 
 [5]
 
 The attending physician or other ordering provider may also request on his or her own initiative a third-level clinical review of a noncertification or denial of payment for medical services following a second-level clinical review.
 
 See
 
 Ala. Admin. Code, r. 480-5-5-.07(4)(c). The third-level clinical-review process “shall be initiated by the provider contacting the [utilization-review entity] or employer/agent by telephone or other immediate means following receipt of the decision to be followed by a written request that shall include medical records and/or data needed to reach a decision.” Ala. Admin. Code, r. 480-5-5-.23(l)(a)2. If a provider believes that a determination not to certify a medical service made prior to or during an ongoing service requiring review warrants reconsideration, the provider may initiate an expedited appeal,
 
 see
 
 Ala. Admin. Code, r. 480-5-5-.07(5)(a), or, if an immediate appeal is not necessary, the provider may initiate a standard appeal,
 
 see
 
 Ala. Admin. Code, r. 480-5-5-.07(5)(b).
 

 Rule 480-5-5-.09 of the Alabama Administrative Code sets forth the procedure for precertification review. Pursuant to subsection (2) of that rule, the employee’s physician, the hospital, or other provider shall initiate the precertification process by contacting the employer or the employer’s agent in advance of treatment or admission into the hospital. If the requested treatment or admission is denied,
 

 “[a] response shall be generated in writing .... Copies of the written response, if required, shall be sent to the requesting provider and shall notify the party of the right to appeal and the appeal process. The denial letter shall contain the following elements: claimant’s name, social security number and addresses; date of accident; date of requested service; procedure requested; name of provider or facility; reason for denial; and the appeals process. The claimant shall be copied on all denial letters.”
 

 Ala. Admin. Code, r. 480-5-5-09(8).
 

 JRC contends on appeal that, acting within its authority as Bolton’s employer, it initiated the utilization-review process,
 
 see
 
 Ala. Admin. Code, r. 480-5-5-.01(7)(“Utilization review and bill screening services may be performed at the option of the employer.”), and that the trial court improperly used the notification requirements relevant only to precertification review when finding it in contempt.
 

 In its November 15, 2006, amended order, the trial court found JRC in contempt because, it determined, JRC had circumvented the administrative regulations governing utilization review. Specifically, the trial court found that JRC had failed to notify Bolton and his attending physicians of the reason for the denial of his medical treatment and that JRC had failed to noti
 
 *874
 
 fy Bolton of his appeal rights. The trial court stated in its order:
 

 “Under Ala. Admin. Code Rule 480-5-5-.07, the Utilization Review Process, [JRC] sought to conduct a Peer Clinical Review (Third Level Clinical Review). In pursuit of this, [JRC] had the medical records reviewed by Dr. Parsons. [JRC] then notified [Bolton] and his treating physicians of the ‘covered medications’ and ‘covered treatment’ only. Under Ala. Admin. Code Rule 480-5-5-.09(8), when treatment is denied, the employer ‘shall notify the [worker] of the right to appeal and the appeal process.’
 

 “In this case, neither the expedited appeal nor the standard appeal was afforded [Bolton] because the letters from Sedgwick [CMS] to [Bolton’s] doctors in San Antonio, Texas, notifying them of [JRC’s] determination, failed to comply with the Administrative Code and provide notice of the appeal process.
 

 “Finally, Ala. Admin. Code Rule 480-5-5-09(8) also requires that the employer notify the worker and his attending physicians of the ‘reason for denial’ when notifying them of the denial. The letters from Sedgwick [CMS] fail to recite any reason at all. In both the January 10th letter and the February 3rd letter from [Bolton’s] attorney, [Bolton] asserted that the cessation of medications and treatment was done without cause. It is uncontroverted that Sedg-wick [CMS] failed to respond to either of those letters. Only after [Bolton] was forced to file [this action] was the report of Dr. Parsons — stating the reason for the denial — produced as an attachment to [JRC’s] answer.”
 

 JRC argues on appeal that it disputed the reasonableness and necessity of Bolton’s ongoing medical treatment by initiating the utilization-review process and not the precertification process. Therefore, JRC maintains, the trial court improperly applied the rules governing precertification review when it found JRC in contempt of its earlier orders and ordered JRC to pay an attorney fee.
 

 The record indicates that, pursuant to Ala. Admin. Code, r. 480-5-5-01(7), JRC initiated the utilization-review process to review Bolton’s ongoing medical treatment. At the time JRC initiated the utilization review, Bolton was taking multiple prescription medications, participating in intermittent physical therapy, and receiving epidural spinal injections. The record contains no evidence indicating that Bolton’s treating physicians submitted any request to JRC or Sedgwick CMS to precer-tify a treatment plan. JRC submitted Bolton’s medical records to Dr. Parsons for third-level clinical review to evaluate whether the medical treatment Bolton was receiving at the time was reasonable and necessary. After receiving a report from Dr. Parsons that found that Bolton’s treatment was not reasonable, necessary, or appropriate, Sedgwick CMS, on behalf of JRC, refused all treatment except that noted in the letters sent to Bolton’s treating physicians. Bolton’s treating physicians, who were providers as defined in the regulations, did not appeal the refusal of treatment.
 
 See
 
 Ala. Admin. Code, r. 480-5-5-07(5).
 

 In its November 15, 2006, order finding JRC in contempt and ordering it to pay an attorney fee, the trial court recognized that JRC had initiated the utilization-review process by conducting a third-level clinical review of Bolton’s medical treatment, but it applied the notification requirements applicable to precertification review. Specifically, the trial court found that the notice given by JRC to the treating physicians “contained no reason for the denial of coverage and no recitation of any
 
 *875
 
 appeal procedure.” However, unlike the rules governing precertification review that require a written response containing specific elements upon denial of treatment,
 
 see
 
 Ala. Admin. Code, r. 480-5-5-.09(8), the rules governing utilization review, although perhaps they should, do not provide for the mandatory inclusion of specific language in a notification to refuse treatment.
 

 Further, even if this court were to extend the notification requirements of pre-certification review to the utilization-review process, thereby requiring JRC to inform Dr. Garcia and Dr. Martinez of the reason for its denial of medical treatment and of the appeal process, it would be incumbent upon the doctors treating Bolton, as providers, to appeal the denial of medical treatment. The rules governing utilization review and precertification review grant the right to appeal an adverse decision only to the provider treating an injured employee.
 

 The record does not indicate, and we are not called on to decide in this case, whether JRC fully and properly complied with the utilization-review process by first submitting Bolton’s medical records to a technical reviewer,
 
 see
 
 Ala. Admin. Code, r. 480-5-5-07(2), followed by a first-level clinical review,
 
 see
 
 Ala. Admin. Code, r. 480-5-5-07(3), and a second-level clinical review,
 
 see
 
 Ala. Admin. Code, r. 480-5-5-.07(4). We are limited in our review to the evidence contained in the record on appeal.
 
 See Bullard v. Creative Leasing, Inc.,
 
 624 So.2d 199, 201 (Ala.Civ.App.1993) (appellate review is limited to the record on appeal). Further, this court is not permitted to address issues that the parties decline to raise on appeal.
 
 Bettis v. Thornton,
 
 662 So.2d 256 (Ala.1995).
 

 Based on its finding that JRC failed to follow the notice requirements provided for in precertification review, the trial court concluded in its November 15, 2006, order that JRC “willfully and contumaciously failed to comply with [its] orders.”
 

 “Rule 70A, Ala. R. Civ. P., governs contempt proceedings that arise out of civil actions. Civil contempt is defined by that rule as the
 
 ‘willful,
 
 continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.’ Rule 70A(a)(2)(D), Ala. R. Civ. P. (emphasis added). Our Supreme Court, in
 
 Travelers Indemnity Co. of Illinois v. Griner,
 
 809 So.2d 808, 814 (Ala.2001), characterized its decision 10 years earlier in
 
 Ex parte Cowgill,
 
 587 So.2d 1002 (Ala.1991), as holding ‘that the [trial] court, in the exercise of its equitable powers, could hold a party in contempt upon a finding that “the employer willfully and contumaciously refused” ’ to follow the trial court’s order.”
 

 Overnite Transp. Co. v. McDuffie,
 
 933 So.2d at 1099-1100.
 

 In
 
 Overnite Transportation Co. v. McDuffie,
 
 supra, the employer and the employee entered into a settlement agreement in which the employer agreed to pay “ ‘future medical benefits as required by the Workers’ Compensation Act of Alabama which was in effect at the time of said accident.’ ” 933 So.2d at 1094 (emphasis omitted). Thereafter, the employer learned that the employee was receiving pain-management treatment from Dr. Edwin Kelsey, a doctor not authorized by the employer to treat the employee. The employer stopped paying for the treatment and denied the employee’s claim for a personal-mobility vehicle. The employee subsequently filed a motion to require the employer to pay for the costs associated with his pain-management treatment. The employee asked the trial court to hold the employer in contempt for allegedly violat
 
 *876
 
 ing the terms of the parties’ settlement agreement and sought an award of an attorney fee. After a hearing, the trial court entered an order finding the employer in contempt and awarding the employee $5,000 as an attorney fee for that contempt. 983 So.2d at 1095.
 

 The employer appealed, arguing that the trial court had erred when it ordered the employer to pay for the treatment that the employee had received from Dr. Kelsey and that the trial court had abused its discretion in holding it in contempt for not having paid those expenses.
 
 Id.
 
 This court held that the employee was entitled to reimbursement under the Act for pain-management treatment by Dr. Kelsey. 933 So.2d at 1099. However, this court reversed the tidal court’s finding of contempt and the attorney-fee award, holding that the employer’s decision to decline to pay for treatment rendered by Dr. Kelsey “was not an unreasonable one and, thus, was not an appropriate basis for a finding of contempt.”
 
 Overnite Transp. Co. v. McDuffie,
 
 933 So.2d at 1099.
 

 In the instant case, JRC acted within its authority when it initiated the utilization-review process. Because JRC initiated the utilization-review process and because the rules governing that process do not require JRC to specifically state the reason for the denial of coverage and to detail the appeal procedure when refusing to pay for medical treatment, JRC could not be held in contempt for failing to state with specificity the reason for denying treatment and to detail the appeal process as is required in precertification review.
 
 See
 
 Ala. Admin. Code, r. 480 — 5—5—.09(8). Given the construction of the rules governing the utilization-review process, we cannot say that the actions of JRC and Sedgwick CMS, on behalf of JRC, were unreasonable. Although we are constrained to interpret the rules set forth in Chapter 480-5-5 as written, we note that the facts of this case demonstrate a need to revisit the rules governing utilization review in order to address the issue of notification to providers of their right to appeal adverse decisions on behalf of the employee.
 

 The record does not support a conclusion that JRC willfully and contumaciously refused to follow the trial court’s orders when it initiated the utilization-review process. The trial court abused its discretion in holding JRC in contempt based on the application of rules pertaining only to pre-certification review. Therefore, we reverse the trial court’s judgment insofar as it found JRC in contempt.
 

 Regarding the trial court’s award of an attorney fee in favor of Bolton, the trial court’s attorney-fee award was based on its finding of willful and contumacious conduct on the part of JRC. Because the trial court's finding of contempt served as the basis for its award of an attorney fee and because we are reversing the trial court’s finding of contempt, we must also reverse its award of an attorney fee in favor of Bolton.
 

 Bolton’s request for an award of an attorney fee on appeal is denied.
 

 REVERSED AND REMANDED.
 

 PITTMAN and THOMAS, JJ., concur.
 

 BRYAN, J., concurs in the result, without writing.
 

 MOORE, J., recuses himself.
 

 [1]
 

 . In his petition, Bolton claimed that at some point after his injury JRC had been acquired by and renamed "Fort James Operating Company, Inc., d/b/a Georgia Pacific.”
 

 [2]
 

 . A postjudgment motion made pursuant to Rule 59 may be taken only from a final judgment.
 
 Momar, Inc. v. Schneider,
 
 823 So.2d 701, 704 (Ala.Civ.App.2001).
 

 [3]
 

 . The March 16, 2007, judgment resolved all issues before the trial court and was, therefore, final.
 
 See McCollough v. Bell,
 
 611 So.2d 383, 385 (Ala.Civ.App.1992) ("Any decision, order, or [judgment] of the trial court which puts an end to the proceedings between the parties to a cause in that court is final and may be reviewed on appeal.'').
 

 [4]
 

 . In the "Statement of Issues" section of its brief on appeal, JRC asks this court to consider whether Bolton presented substantial evi
 
 *872
 
 dence that the treatment at
 
 issue
 
 was medically necessary. However, JRC fails to set forth any argument regarding that issue in its brief on appeal. "Failure to argue an issue, with citation to applicable authority, is tantamount to a waiver of that issue on appeal."
 
 Cain v. Haworth,
 
 877 So.2d 566, 584 (Ala.2003) (citing
 
 Ex parte Riley,
 
 464 So.2d 92 (Ala.1985)).
 

 [5]
 

 . “Providers” are defined as "[a] medical clinic, pharmacist, dentist, chiropractor, psychologist, podiatrist, physical therapist, pharmaceutical supply company, rehabilitation service, other person or entity providing treatment, service, or equipment, or person or entity of providing facilities at which the employee receives treatment.” Ala. Admin. Code, r. 480-5-5-.02(62).