THOMAS, Judge.
Debra Harris injured her neck, left shoulder, and back on April- 3, 2011, while she was performing the duties of her . employment with Augmentation, Inc. Harris *105 sued Augmentation in the Tuscaloosa Circuit Court in April 2013, seeking, workers’ compensation benefits. Augmentation sought an independent medical examination, but the trial court denied Augmentation’s motion. On April 3, 2014, the trial court entered a judgment incorporating the parties’ settlement of the workers’ compensation claim (“the April 2Ó14 judgment”). The judgment stated that “future medical benefits shall remain open.”
On March 6, 2015, Harris filed a motion to hold Augmentation in contempt for its failure to authorize, approve, and pay for medical treatment prescribed by Dr. James P. Bailey, Harris’s authorized treating physician. Specifically, Harris complained that Augmentation had failed to approve an epidural steroid injunction and medications prescribed to treat her lumbar back injury. In addition, Harris alleged that Augmentation and its workers’ compensation carrier had failed to reimburse her for mileage costs for her travel to and from appointments with Dr. Bailey on April 16, 2014, and July 31, 2014, as required by Ala. Code 1975, § 25-5-77(f). Harris sought a finding of contempt, appropriate sanctions, and attorney fees.
Augmentation filed a response to Harris’s contempt motion on July 13, 2015.[1] At the conclusion of that response. Augmentation requested leave to take the depositions of Dr. Gordon Hardy and Dr. J. Todd Smith, two physicians employed by Augmentation to review Harris’s medical records to determine whether Dr. Bailey’s continued treatment of Harris was related to .her April 2Q11 accident. Harris replied to Augmentation’s response on July 17, 2015, and Augmentation filed a “second response” on July 20, 2016. The trial court set the matter for hearing on August 18, 2015. Augmentation filed a motion seeking clarification of the trial court’s orders setting the August 18, 2015, hearing, stating:
“Defense counsel is not sure specifically which issues will be heard at the August 18, -2015, hearing. Defense counsel is also unclear whether the Defendant’s request for leave to take the depositions of Dr. Smith and Dr. Hardy will be decided at that hearing, or whether that request was denied by virtue of the denial of the Defendant’s Motion to Continue. Furthermore, Defense counsel is unclear whether it should have its witnesses in attendance and prepared to testify at the August 18 hearing.”
The trial court apparently held a hearing on or about August 18, 2015,[2] and then reset the case for November 17, 2015, and, finally, for November 24, 2015. The record on appeal contains the transcripts of only the November hearings.
After the November 2015- hearings, at which the trial court took evidence, both parties presented written briefs outlining their respective positions, and the trial court entered a judgment on December 4, 2015. In its. judgment, the trial court determined that Augmentation was .in contempt of the April 2014 judgment, concluding as follows:
“The undisputed evidence established-that the authorized treating physician, Dr. Bailey, had prescribed certain medical treatment for [Harris], Despite knowing of the prescribed medical treatment and having no evidence that the *106 ordered medical treatment was not reasonable and necessary, [Augmentation] willfully and contumaciously refused to provide the medical treatment ordered by Dr. Bailey for a period of more than one year. Dr. Bailey testified that he has ordered the same medical treatment to treat [Harris’s] April 3, 2011 injuries for over four years. The evidence showed [Augmentation] failed to respond to communications on behalf of [Harris] before the filing of [Harris’s] Motion to find [Augmentation] in Contempt.
“The Court hereby finds [Augmentation] in contempt for its willful, continuing failure or refusal to comply with this Court’s Settlement Order dated April 3, 2014, wherein the Court ordered that future medical benefits shall remain open. The Court further finds that [Augmentation] failed to present good and valid reasons for its refusal to authorize medical treatment ordered by Dr. Bailey or to question its liability for the medical treatment ordered by Dr. Bailey. The evidence established [that Augmentation] failed to follow the utilization review process or petition the Court for judicial review before denying authorization of the medical treatment ordered by Dr. Bailey. The Court concludes the written opinions from Dr. Hardy and Dr. Smith do not constitute good and valid reasons for [Augmentation] to willfully and contumaciously refuse to provide medical treatment since [Augmentation] requested those written opinions months after [Harris] filed her Motion to find [Augmentation] in Contempt.”
The judgment ordered Augmentation to immediately provide and pay for the medical treatment ordered by Dr. Bailey. The judgment awarded Harris a total of $10,975, which included $300 in reimbursement for medical expenses, $10,425 in attorney fees, and $250 in deposition costs. Augmentation timely appealed from the judgment.
“Our standard of review in workers’ compensation cases was prescribed by the Legislature in Ala. Code 1975, § 25-5-81(e)(2). We recently set forth that standard, as well as the other applicable presumptions:
‘“When this court reviews a trial court’s factual findings in a workers’ compensation case, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Further, this court reviews the facts “in the light most favorable to the findings of the trial court.” Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App.1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262 (Ala.1996). This court has also concluded: “The [1992 Workers’ Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995). However, our review as to purely legal issues is without a presumption of correctness. See Holy Family Catholic School v. Boley, 847 So.2d 371, 374 (Ala.Civ.App.2002) (citing § 25-5-81(e)(1), Ala. Code 1975).’
“Reeves Rubber, Inc. v. Wallace, 912 So.2d 274, 279 (Ala.Civ.App.2005). Additionally, we review a finding of civil contempt under an abuse-of-discretion standard. Gilbert v. Nicholson, 845 So.2d 785, 791 (Ala.2002).”
*107 Overnite Transp. Co. v. McDuffie, 933 So.2d 1092, 1095-96 (Ala.Civ.App.2005).
The testimony at the evidentiary hearing held on November 17, 2015, consisted of the testimony of Harris and of William J. Donald, who testified regarding attorney fees incurred by Harris.[3] The September 2013 and September 2015 depositions of Dr. Bailey were admitted into evidence. At the November 24, 2015, evidentiary hearing, Augmentation presented no witnesses and merely presented documentary evidence in support of its position, including the “Independent Medical Record Review” performed by Dr. Hardy and the “Peer Review” performed by Dr. Smith on Harris’s medical records.
Harris testified that she had been injured at work on April 3, 2011, and that she had begun treatment with Dr. Bailey on April 12, 2011. She explained that her treatment had included therapy, a prescription muscle relaxer, anti-inflammatory patches, and epidural steroid injections for the pain related to the injury to her back and neck. According to Harris, after August 2014, Augmentation had declined to approve her prescription muscle relaxer and her anti-inflammatory patches or to preapprove her epidural steroid injection, which Dr. Bailey had prescribed in July 2014. Harris testified that she had attempted to contact the workers’ compensation' adjuster, Tina Bonner Zinn, by telephone six or more times but that she had never received a return telephone call despite having left Zinn messages. She said that she had not- been able to receive her prescriptions or an epidural steroid injection for a year and a half at the time of the November 17, 2015, hearing. Harris said that her pain made her uncomfortable and that she could not sleep lying flat; instead, she said, she slept in a recliner.
In his September 2015 deposition,. Dr. Bailey testified that he had initially diagnosed Harris with a cervical strain and a lumbar strain. However, Dr. Bailey said, by September 2013, Harris’s cervical strain had resolved and she was no longer being treated for it. According to Dr. Bailey, Harris’s lumbar back symptoms waxed and waned but never completely resolved after the April 2011 injury. He said he had diagnosed Harris’s strain as a chronic one based on his continued treatment of her; her reports of continued pain, including, at times, radiation of pain into her right leg; and his clinical impressions, which included repeated findings of tenderness in the lower back region and a limited range of motion.
Dr. Bailey testified that he had prescribed an epidural steroid injection for Harris during a July 31, 2014, office visit because she had complained again of pain radiating into her right leg. He said that such treatment had resolved much of Harris’s discomfort in the past. Dr. Bailey said that he next saw Harris on January 9, 2015, and that he had prescribed only the muscle relaxer and the anti-inflammatory patches at that time because Harris had recently been diagnosed as a diabetic and, he explained, epidural steroid injections are considered more risky for diabetic patients. He said, however, that he would not rule out prescribing such treatment in the future if circumstances warranted. As of the date of his September 2015 deposition, Dr. Bailey had last seen Harris on July 10, 2015. At that office visit, he said, he had again prescribed the muscle relaxer and the anti-inflammatory patches.
*108 Dr. Bailey testified that he had received a letter from Zinn dated August 14, 2014. In that letter, Zinn questioned the medical necessity of the epidural steroid injection prescribed by Dr. Bailey on July 31, 2014. The letter reads:
“I have received a request from your office for a lumbar [epidural steroid] injection and your office notes dated July 31, 2014.
“Your office notes dated July 31, 2014, under title Lumbar Examination’there are no notes typed. I need to know what your examination of Ms. Harris’ lumbar spine showed. Also, your July 31, 2014, notes state that you ordered’ an x-ray of the lumbosacral spine; however, the title Imaging Findings is left blank. I need to know what the x-ray of the lumbosacral spine showed.
“Also, please provide the medical necessity of the [epidural steroid] injection based on a diagnosis of lumbar strain/ sprain from an April [3], 2011, work injury three years earlier. Also with an MRI done on June 17, 2011, that showed only mild foraminal stenosis at the lower three lumbar levels then a follow up lumbar- MRI that provided an impression of normal. For your review, copies of the MRI reports are attached.
“Please be advised that I will need this information to review for approval of the [epidural steroid] injection.”
According to Dr. Bailey, his staff had sent Zinn an office note that had been “dictated, not read,” in support of the request that Harris be approved to receive the epidural steroid injection. He explained that he had not reviewed or finalized -the ’digital note before it was-sent and that It had not contained certain information regarding his examination of Harris. Dr. Bailey testified that, after he received Zinn’s letter, he reviewed the note and added the missing information; he then forwarded the note, which indicated that it had been digitally signed by him, to Zinn. The completed note read, in pertinent part:
“History of Present Illness
“[Harris] is a 39 year old female.who is seen today for [lower back pain]. Low back pain is moderate with a rating of -5/10. Patient states pain is radiating into her right leg, that is a recent change, but was present previously. [Epidural steroid injection] eliminated this before. She states the pain is ongoing—however it has increased over the last three (3) weeks to current levels. She states the pain is affecting her sleep and daily activity. There have been no significant changes in the current symptoms. She describes the symptoms as aching and sharp. Additional symptoms include difficulty walking and radiation of pain on the involved side. She wakes at night with pain, 5 nights during the week. Symptoms are made worse with activity.
“There has been no new injury.
“No cauda equina or radicular type symptoms are present.
“This initially-was an ¡on the job accident while..working as a nurse at a mental health facility.- Injury date was 4/ [3] /2011,.That continues to be what we¡ are treating her for and that continuing problem since 4/ [3] /2011 is what we are seeing. her for today.
“She has had [physical therapy], bracing, meds, [epidural steroid injection], which were very effective‘and for a time were replaced by [anti-inflammatory] -patches.- However now pain has intensified and she wanted to talk about [epidural steroid .injection] again. MRI scan lumbar was done last on 2/22/13. Last [epidural steroid injection] was on 12/11/2012.
*109 “She was given work restrictions, permanent, on 12/8/2011, consisting of modified nursing duties, with a 25# limit for any activity. This has not been accommodated so far, and she remains out of work. She' has not been, and continues not to be able to do regular nursing duty from the first time I saw her. Main complaint last several visits has been lumbar spine. That is the current situation as well.
[[Image here]]
“Lumbar Examination
“Back pain 100%, No obvious Curvature of the spine. Palpation of the back is nontender at the Trochanters. Palpation of the back is tender at the midline, paraspinal regions and [posterior superior iliac spine] bilaterally. Flexion is limited. Extension 100%. Motor strength lower extremities intact. No clonus in the lower extremities. Sensation is intact in the lower extremities. [Deep tendon reflexes] are symmetrical in the lower extremities, Babinski reflex testing down-going. Straight leg raise is negative.
[[Image here]]
“Imaging Orders:. X-rays of the lumbo-sacral spine were ordered, obtained and interpreted from an orthopedic standpoint,
“Imaging Findings: No acute changes.”
Dr. Bailey testified-that he believed that the completed note adequately addressed Zinn’s questions. Dr. Bailey stated that he did not recall responding to Zinn’s letter in any way other than by sending the completed note. The sole inquiry to Dr. Bailey contained in the record is the August 14, 2014, letter, which, we note, questioned the necessity of only the epidural steroid injection.
As noted above,, the written opinions of Dr. Hardy and Dr. Smith were admitted into evidence. Dr. Hardy stated that, in his opinion, Harris’s “records reflect an injury consistent with an acute lumbar strain” as opposed to a chronic strain. He further opined that Harris’s continued complaints of pain were not related to her work-related injury and that Dr. Bailey’s treatment recommendations, including the anti-inflammatory patches, were not appropriate treatments beyond 6 to 12 months after the injury. Dr. Hardy concluded with the following statement: .
“[Harris’s] cervical and lumbar injuries were acute in nature' from a single incident. MRI scans of the cervical- and lumbar spine along with nerve conduction studies were unremarkable. There are no objective findings in [Harris’s] medical records to support ongoing treatment from an acute injury. Symptoms from the acute injury are resolved within 6 months from the date of injury.”
Similarly, Dr. Smith stated in his report that, in his opinion, Harris’s lower back pain was “unrelated to her work-related accident from [four] years ago.” He explained that, although Harris had suffered a lumbar strain at the time of the accident, he did not think that she continued to suffer from a chronic lumbar strain. He explained:
“I do believe [Harris] had a lumbar strain that occurred at . the time of the original injury. MRI studies of the lumbar spine did not show any evidence of disc injury, fractures, instability, liga-mentous injury, edema in the musculature. These all point to the fact it is very unlikely the patient would have. any long-term sequelae from the -lumbar strain; therefore, I do not believe the patient is having back pain associated with a chronic lumbar strain and I do not agree with the diagnosis of chronic *110 lumbar strain as the cause of her current low back pain.”
Dr. Smith further stated that, based on his review of Harris’s medical records, Harris “had normal range of motion by May 2011 in the ... lumbar spine,” indicating, he said, that “the sprain portion of this had resolved by that point.” Based on his conclusion that Harris did not suffer from a chronic lumbar strain, Dr. Smith opined that “any treatments provided for the lumbar spine[, including anti-inflammatory patches, a lumbar brace, physical therapy, or epidural steroid injections,] would not be related to chronic strain.”
In his September 2015 deposition, Dr. Bailey was questioned regarding the written opinions of Dr. Hardy and Dr. Smith. Regarding Dr. Smith’s explanation for his conclusion that Harris did not suffer from a chronic lumbar strain, Dr. Bailey testified that he disagreed with Dr. Smith’s opinion because, Dr. Bailey said, a strain cannot be diagnosed on an MRI or other scans. Instead, Dr. Bailey explained, a strain is diagnosed based on the patient’s history and a physical examination of the patient.
When asked about Dr. Hardy’s comment that Dr. Bailey had not documented objective physical findings supporting a conclusion that Harris suffered from a chronic strain, Dr. Bailey explained that he had documented tenderness to palpation and limitation of motion. Dr. Bailey also testified that he disagreed with Dr. Hardy’s statement that a lumbar strain like the one Harris suffered would resolve within six months from the date of injury. According to Dr. Bailey, most strains do resolve, but, he said, in less than five percent of patients the strain does not resolve and becomes chronic.
On appeal, Augmentation first argues that the trial court erred by concluding that it had violated the April 2014 judgment or that it had done so willfully and contumaciously. Secondly, Augmentation argues that the trial court erred by “finding it liable for Harris’s ongoing and future medical treatment.” In the corresponding section of its brief, Augmentation complains that the trial court erred by failing to allow “meaningful discovery” and by failing to conduct a trial on the merits to determine whether Augmentation is required by the April 2014 judgment to pay for Harris’s ongoing and future medical treatment. Augmentation further argues that the trial court’s conclusion that Augmentation is liable for all of Harris’s future medical treatment is not supported by substantial evidence. We will address these arguments in a different order than the order in which they appear in Augmentation’s brief.
Augmentation argues that the trial court failed to permit meaningful discovery and failed to conduct a trial on the merits of the dispute. As noted above, the trial court held a total of four hearings, two of which were evidentiary hearings. In fact, the trial court specially set the November 24, 2015, hearing to accommodate Augmentation’s witness, who had suffered a migraine headache on November 17, 2015, and could not attend the hearing on that date. Despite the accommodation, Augmentation’s witness did not attend the November 24, 2015, hearing, and Augmentation did not present a witness at either evidentiary hearing. We cannot agree that the trial court failed to conduct a trial on the merits of the dispute; instead, it appears that Augmentation failed to take advantage of the opportunity to present its witnesses at the evidentiary hearings conducted by the trial court.
Insofar as Augmentation complains that the trial court prevented it from conducting meaningful discovery, we *111 note that, in contravention of Rule 28(a)(10), Ala. R. App. P., Augmentation does not support the argument that such is reversible error with any authority regarding the right to discovery. See White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008) (“Rule 28(a)(10) requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If .they do not, the arguments are waived.”). Furthermore, the record does not support reversal. Although the record reflects that Harris sought permission to conduct “postjudgment” discovery, which was granted, see note 1, supra, the record does not reflect that Augmentation sought similar permission. However, Augmentation requested leave of court to take the depositions of Dr. Hardy and Dr. Smith. We presume that Augmentation sought such leave because parties to a workers’ compensation case are generally permitted to take only two depositions, in addition to those of each party; additional depositions may be taken only “with leave of court for good cause shown .... ” Ala. Code 1975, § 25-5-81(f)(1). Although Augmentation requested leave to depose Dr. Hardy and Dr. Smith, the record does not indicate whether the trial court granted or denied Augmentation the requested leave. Thus, insofar as Augmentation complains about not being permitted to conduct discovery, the record does not support a conclusion that the trial court committed any error by refusing to permit Augmentation the right to conduct discovery. Chadwick Timber Co. v. Philon, 10 So.3d 1014, 1019 (Ala.Civ.App.2007) (quoting Leeth v. Jim Walter Homes, Inc., 789 So.2d 243, 247 (Ala.Civ.App.2000), quoting in turn Newman v. State, 623 So.2d 1171, 1172 (Ala.Civ.App. 1993)) (“ ‘ “This court cannot assume error, nor can it presume the existence of facts to which the record is silent. The appellant has the burden of ensuring that the record contains sufficient evidence to warrant reversal.” ’ ” (internal citations omitted)). Thus, we decline to reverse the judgment on the ground that the trial court prevented meaningful discovery.
Augmentation also argues that the trial court erred in determining that Augmentation violated the April 2014 judgment. Specifically, Augmentation contends that the trial court improperly construed the April 2014 judgment to mean that “Augmentation accepted liability for Harris’s alleged injuries and agreed to authorize and pay for Harris’s medical treatment.” Augmentation stresses that the settlement agreement incorporated into the April 2014 judgment indicated that Harris’s claim was contested by Augmentation and contemplated that the issue of Augmentation’s responsibility for Harris’s future medical treatment would remain open “subject to all medical -necessity, causation, and pre-authorization requirements as provided in the Workers’ Compensation Act.” Thus, Augmentation contends, the trial court could not have concluded that, pursuant to the April 2014 judgment, Augmentation had “accepted liability” for Harris’s future medical treatment.
The trial .court’s judgment specifically states that the April 2014 judgment “required [Augmentation] to provide reasonable and necessary medical treatment related to [Harris’s] compensable injury.” That statement does not indicate that the trial court concluded that Augmentation had accepted liability for Harris’s future medical treatment without limitation. The trial court’s judgment, when read as a whole, indicates that the trial court considered whether the evidence supported a conclusion that Dr. Bailey’s prescribed treatment was reasonably related to Harris’s April 2011 injury and specifically references Augmentation’s right to properly contest the reasonable necessity of Har *112 ris’s prescribed medical treatment. Thus, we cannot agree that the trial court erred in construing the April 2014 judgment.
We how turn to Augmentation’s argument that the trial court erred by declaring that Augmentation was required to pay for any and all future treatment prescribed by Dr, Bailey. We do not understand the trial court’s judgment to make such a blanket determination. Instead, the judgment indicates that the trial court understood that the issue regarding Augmentation’s responsibility for Harris’s future medical treatment was to remain open under the April 2014 judgment and that Augmentation could seek to challenge the reasonable necessity of any treatment prescribed for Harris. We note that in its judgment the trial court cautions Augmentation that the trial court will not look favorably upon any future failure to pay for treatment prescribed by Dr. Bailey. We understand that admonition to refer to continued medical treatment of the chronic lumbar strain by use of the muscle relaxers and anti-inflammatory patches at issue in the present action in the near future, especially in light of the trial court’s clear recognition of Augmentation’s right to contest the reasonable. necessity of medical treatment. Furthermore, Harris concedes that the judgment does not require “Augmentation to authorize and pay for any and all treatment which Dr. Bailey may prescribe in the future.” Thus, we cannot, hold the trial court in error for determining that Augmentation was required to pay for any and all of Harris’s medical treatment when the judgment does not so provide.[4]
 We turn now to Augmentation’s argument that the trial court erred by concluding that its decision to refuse to pay for Harris’s prescribed medical treatment was willful 'and contumacious.
“Rule 70A, Ala. R. Civ. P., governs contempt proceedings that arise out of civil actions. Civil contempt is defined by that rule as the ‘willful, continuing failure or refusal of, any person to comply with a court’s lawful writ, subpoena, process,'‘order, rule, or command that by its nature is still capable of being complied with.’ Rule 70A(a)(2)(D), Ala. R. Civ. P. (emphasis added). Our Supreme Court, in Travelers Indemnity Co. of Illinois v. Griner, 809 So.2d 808, 814 (Ala.2001), characterized its decision 10 years earlier in Ex parte Cowgill, 587 So.2d 1002 (Ala.1991), as holding ‘that the [trial] court, in the exercise of its equitable powers, could hold a party in contempt upon a finding that “the employer willfully and contumaciously refused”’ to follow the trial court’s order.”
Overnite Transp. Co., 933 So.2d at 1099-100.
As noted above, the trial court based its determination. that. Augmentation’s .refusal to pay for Harris’s prescribed medical treatment was willful and contumacious, in part, , on Augmentation’s failure to prove that it had a valid reason to believe that the treatment prescribed by Dr. Bailey was not reasonable and neces *113 sary at the time it chose to refuse to pay for that treatment. In addition, the trial court noted that Augmentation failed to resort to a utilization-review process, see Ala. Code 1975, § 25-5-293(g) (permitting employers, at their option, to institute a utilization-review program to review claimed medicar expenses for reasonable necessity), or to seek judicial review of the dispute before refusing to pay for Harris’s treatment. See Ala. Code 1975, § 25-5-77(a) and § 25-5-88; Fluor Enters., Inc. v. Lawshe, 16 So.3d 96, 99 n. 1 (Ala.Civ.App. 2009) (“Pursuant to the Workers’ Compensation Act, Ala. Code 1975, § 25-5-1. et seq., the employer has the right to contest the reasonableness, or the necessity of the medical treatment provided to an injured employee under Ala. Code 1975, § 25-5-77(a)....”).
“It is true that a circuit; court that approves a workers’ compensation settlement that leaves open future medical benefits retains jurisdiction over any controversy that might arise regarding those benefits. See Wal-Mart Stores, Inc. v. Pitts, 900 So.2d 1240, 1244 (Ala.Civ.App.2004) (‘In this case, because the issue of future medical, benefits was. left open by the parties in their 1994 settlement agreement, the trial court retained jurisdiction over any controversy that might arise between the parties as , to the employee’s medical care.’). However, the Act specifically provides the manner in which the circuit court can decide such a controversy. Section 25-5-88 requires that an employer disputing its liability for an injury must file a petition setting out the basis of the dispute and that the circuit court must follow the rules of civil procedure in deciding that dispute.”
Total Fire Prot., Inc. v. Jean, 160 So.3d 795, 799 (Ala.Civ.App.2014) (emphasis added).
The trial court concluded that Augmentation had not properly investigated or challenged its obligation to pay for Dr. Bailey’s prescribed treatment before it declined to pay for that treatment. The trial court commented that Augmentation had “no evidence that the ordered medical treatment was not reasonable and necessary” at the time it decided to decline to pay for that treatment beginning in August 2014 and that the medical opinions upon which Augmentation relied to attempt to prove that the prescribed treatment was not reasonably necessary had been secured in late May and June 2015, well after' Harris was required to seek enforcement of the April 2014 judgment. Therefore, the trial court concluded, Augmentation did not have á good and valid reason for its refusal to pay for Harris’s prescribed medical treatment at the time of its refusal to do so.
Certainly, “sanctions for contempt ‘should not be' imposed if the employer has a valid reason to question its liability for the- medical expense in dispute.’” Travelers Indem. Co. of Illinois v. Griner, 809 So.2d 808, 814 (Ala.2001). However, if the evidence supports a conclusion that “the employer willfully and contumaciously refused to provide the expenses for the medical care,” Ex parte Cowgill, 587 So.2d 1002, 1004 (Ala.1991), a trial court may hold an employer in contempt for its failure to pay for an employee’s medical treatment. As noted above, “‘[t]he issue whether to hold a party in contempt is solely within the discretion of the trial court, and-a trial court’s contempt determination will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that its judgment is not supported by the evidence.’” Good Hope Contracting Co. v. McCall, 187 So.3d 1128, 1142 (Ala.Civ.App.2015) (quoting Poh v. Poh, 64 So.3d 49, 61 (Ala.Civ.App.2010)).
*114 In the present case, the evidence demonstrated that Augmentation immediately-questioned Dr. Bailey about the necessity of the epidural steroid injection, for which preapproval was required, by letter in August 2014. Dr. Bailey responded with a completed note, and, based on the evidence contained in the record, Augmentation made no further attempts to contact Dr. Bailey for further information, and yet did not approve the injection. In fact, Augmentation also refused to pay for Harris’s prescription muscle relaxers and anti-inflammatory patches for more than one year, despite not having requested information regarding the necessity of those prescribed treatments. Although Augmentation argues in its brief on appeal that Zinn, via “numerous” telephone calls, “made repeated requests to Dr. Bailey for a written opinion as to whether the [epidural steroid] injection[ ] and [anti-inflammatory] patches were related to Harris’s injuries sustained in the accident, and, if so, how they are related,” the record contains no evidence supporting Augmentation’s contention. The August 14, 2014, letter refers solely to the epidural steroid injection, and, because Zinn did not testify, Augmentation presented no evidence indicating that Zinn had made “numerous” attempts to contact Dr. Bailey regarding the necessity of the injection after the initial August 2014 letter or of the anti-inflammatory patches through any other means or at any other time. Instead, from all that appears of record, Augmentation questioned the necessity of the epidural steroid injection once and never questioned the muscle relaxer or the anti-inflammatory patches as unnecessary or unrelated to Harris’s work-related injury. Furthermore, as the trial court noted, Augmentation did not participate in utilization review or seek judicial review of its duty to pay for Harris’s medical treatment.[5]
Thus, this case is unlike Jesse Stutts, Inc. v. Hughey, 154 So.3d 155 (Ala.Civ.App.2014), in which this court reversed a finding that the employer was in contempt for failing to pay for certain medical treatment after the entry of a judgment incorporating a settlement agreement that left the issue regarding responsibility for future medical treatment open. The employer in Hughey had filed a motion in the trial court seeking “a determination of whether it was obligated to pay for further medical benefits for [the employee],” and the employee filed a motion seeking to have the employer held in contempt for declining to pay for his medical treatment. Hughey, 154 So.3d at 159. After holding an evidentiary hearing, the trial court in Hughey entered a judgment ordering the employer to provide the requested medical treatment and finding the employer in contempt. Id. at 160. We reversed the determination that the requested medical *115 treatment was causally related to the employee’s work-related accident, and we also reversed the finding of contempt. Id. at 164-65. We explained that the employer
“clearly had the right to dispute whether the [requested medical treatment] was reasonably necessary as part of its obligations pursuant to the [earlier] settlement agreement. Given the facts of this case, [the employer] had a reasonable basis for bringing the dispute before the trial court for a resolution, as provided for in the Act.”
Id. at 164 (internal citations omitted).
Based on the state of the record in this ease, we cannot conclude that the trial court abused its discretion by determining that Augmentation’s failure to pay for Harris’s medical treatment was willful and contumacious. The record reflects that Augmentation did not seek information from Dr. Bailey regarding the necessity of the muscle relaxers or anti-inflammatory patches he prescribed. Unlike the employer in Hughey, Augmentation did not seek judicial review of the dispute over its duty to pay for Harris’s medical treatment. Instead, Augmentation refused to pay for Harris’s medical treatment for over a year and waited to raise its challenge to its duty to pay for that treatment until Harris filed a contempt motion. In addition, although the record reflects that Zinn indicated that Dr. Bailey’s records did not, in her opinion, support the need for an epidural steroid injection, the record does not contain Zinn’s qualifications to make such a determination, and, as the trial court pointed out, Augmentation did not seek expert opinions to support its challenge to the reasonable necessity of the prescribed medical treatment until May and June 2015, well after the denial of that treatment and after Harris had filed her contempt motion. Accordingly, we affirm the trial court’s judgment holding Augmentation in contempt.
AFFIRMED.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.

. The State Judicial Information System case-action-summary-sheet indicates that the trial court held a hearing on Harris’s motion in April 2015 and that Harris sought, and the trial court granted, postjudgment discovery in May 2015.

. The record contains some discrepancy regarding when the August 2015 hearing was held. Counsel for Harris stated at the November 17, 2015, hearing that the August hearing was held on August 20, 2015.

. Because Augmentation has not argued that the amount of attorney fees awarded in this case is not supported by the evidence, we will not recount Donald's testimony concerning attorney fees in this opinion.

. Because we have concluded that the judgment does not require Augmentation to pay for any and all of Harris's future medical treatment, we pretermit consideration of Augmentation’s argument that substantial evidence does not support the conclusion that Augmentation should be liable for all future treatment prescribed by Dr, Bailey. Augmentation does not specifically challenge the trial court’s determination that. Dr. Bailey’s testimony supports a conclusion that the medical treatment at issue in the present case was reasonably necessary and related to Harris's April 2011 injury. Thus, we deem that argument to have been waived. Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003) (stating general principle that- the failure to present and argue an issue in,ati appellant’s brief amounts to a waiver of that issue on appeal).

. We note that in Ex parte Southeast Alabama Medical Center, 835 So.2d 1042, 1050 (Ala.Civ.App.2002), this court indicated that an employer may refuse to pay for medical treatment based on a “decision that a treatment recommended by an authorized physician is not reasonably necessary ... only if the employer has first followed, and has made that decision based upon,” the utilization-review procedure set out in Ala. Admin. Code (Workers’ Compensation), Rule 480-5-5-, 01 et seq. However, this court further recognized in Ex parte Southeast Alabama Medical Center that Ala. Code 1975, § 25-5-293(g), makes implementation of a utilization-review procedure voluntary. Id. at 1061. Because the trial court in the present case indicated that it was basing its contempt finding, in part, on Augmentation’s failure to use either a utilization-review process or to petition for judicial review before declining to pay for Harris’s medical treatment, we need not determine whether Augmentation was precluded from challenging the reasonable necessity of the prescribed treatments because it has apparently not "implement[ed] utilization review and bill screening” pursuant to § 25-5-293(g).